```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

  * * * * * * * * * * * * * * * *
UNITED STATES OF AMERICA,        )   Criminal Action
                                 )   No. 22-11
vs.                              )
                                 )
ZACHARY JOHNSON, et al.,         )   December 14, 2022
            Defendants.          )   4:17 p.m.
                                 )   Washington, D.C.
  * * * * * * * * * * * * * * * *

              TRANSCRIPT OF STATUS CONFERENCE
          BEFORE THE HONORABLE RICHARD J. LEON,
       UNITED STATES DISTRICT COURT SENIOR JUDGE

  (Parties appearing via videoconference and/or telephonically.)
```

**APPEARANCES**:

FOR THE UNITED STATES:   NADIA MOORE
                         U.S. ATTORNEY'S OFFICE
                         271 Cadman Plaza East
                         Brooklyn, NY 11201
                         (718) 254-6362
                         Email: Nadia.moore@usdoj.gov

                         MICHAEL MATTHEW GORDON
                         Department of Justice-USAO
                         400 North Tampa Street
                         Tampa, FL 33602
                         (813) 274-6370
                         Email: michael.gordon3@usdoj.gov

FOR DEFENDANT JOHNSON:   GEORGE ELLIS SUMMERS
                         Federal Public Defender
                         Florida Middle
                         2075 West First Street
                         Fort Myers, FL 33901
                         (239) 334-0397
                         Email: ellis_summers@fd.org

FOR DEFENDANT RAJEWSKI:  ALLEN HOWARD ORENBERG
                         12505 Park Potomac Avenue
                         Potomac, MD 20854
                         (301) 984-8005
                         Email: aorenberg@orenberglaw.com

                  **(Appearances Continued)**

**APPEARANCES (Continued):**

FOR DEFENDANTS FISCHER AND BOELLE:

    CAROLYN STEWART
    1204 Swilley Road
    Plant City, FL 33567
    (813) 451-5753
    Email: carolstewart_esq@protonmail.com

FOR DEFENDANT BRETT:

    MARY PETRAS
    Federal Public Defender
    For the District of Columbia
    625 Indiana Ave, NW
    Washington, DC 20004
    (202) 208-7500
    Email: elizabeth_mullin@fd.org

Court Reporter:    Elizabeth Saint-Loth, RPR, FCRR
                      Official Court Reporter

This hearing was held via videoconference and/or telephonically and is, therefore, subject to the limitations associated with audio difficulties while using technology, i.e., static interference, etc.

Proceedings reported by machine shorthand.
Transcript produced by computer-aided transcription.

```
 1                  P R O C E E D I N G S
 2              THE COURTROOM DEPUTY:  The United States District
 3     Court for the District of Columbia is now in session.  The
 4     Honorable Richard J. Leon presiding.  God save the
 5     United States and this Honorable Court.
 6              Please come to order.
 7              Your Honor, we are on the record in Criminal
 8     Case 22-011, the United States of America versus Zachary
 9     Johnson, et al.
10              Starting with the government, please state your
11     appearance for the record.
12              MS. MOORE:  Good afternoon, Your Honor.
13     Nadia Moore and Michael Gordon for the United States.
14              THE COURT:  Welcome.
15              MR. SUMMERS:  Good afternoon, Your Honor.
16     Ellis Summers for Zachary Johnson.
17              MR. ORENBERG:  Good afternoon, Your Honor.
18     Allen Orenberg on behalf of Dion Rajewski.
19              MS. STEWART:  Good afternoon, Your Honor.
20     Carolyn Stewart representing Alan Fischer and Brian Boele.
21              THE COURT:  Welcome.
22              MS. PETRAS:  Good afternoon, Your Honor.
23     Mary Petras, standing in for Elizabeth Mullin, on behalf of
24     Mr. Brett.
25              THE COURT:  Welcome.
```

1          All right.  Counsel, why don't we start with the
2     government and get an update on where things stand at the
3     moment.
4          MS. MOORE:  Yes, Your Honor.
5          Since we were last here, the government has
6     produced a number of global discovery productions to the
7     defense.  I understand, from conversations my colleague
8     Mr. Gordon had with defense counsel that they are requesting
9     additional time -- I think various defense counsel are
10    asking for between 30 and 90 days -- to put this over so
11    that they can continue the review of that discovery.
12         In addition, Mr. Gordon and I intend to be able to
13    extend plea offers to the defendants hopefully by the end of
14    next week.  So we were hoping to put this matter over one
15    final time to give the defense time both to review the
16    additional discovery that's been provided and also to review
17    the plea offers that we hope to extend to see if this case
18    can be resolved short of trial.
19         THE COURT:  Is there any further basis, Counsel,
20    why these people are being charged together, other than the
21    fact that I know two of them are related?
22         MS. MOORE:  Yes, Your Honor.
23         I think at the last hearing there was some
24    contention that these defendants were charged together
25    merely because they were Proud Boys from Florida, and that's

1  simply inaccurate.  These defendants committed the crimes
2  they're charged with together, and they are charged under an
3  aiding and abetting theory.
4              In the lead-up to January 6 and the day after, the
5  time period between January 4 and 7, there were a number of
6  telephonic communications amongst these various defendants,
7  all of them speaking with each other, except for
8  Mr. Rajewski and Mr. Johnson.  So Mr. Boelle communicated
9  with all of the other defendants; Mr. Brett did the same;
10 Mr. Fischer did the same.  Mr. Rajewski communicated with
11 Boelle, Fischer, and Brett; and Mr. Johnson communicated
12 with Boele, Brett, and Fischer.
13             Then, on the day of January 6, these defendants
14 all met at the Washington Monument where they joined a group
15 of, approximately, 200 Proud Boys who marched from the
16 Washington Monument to the Capitol grounds.
17             During that march these defendants were frequently
18 marching with each other.  Once they got to the restricted
19 area, at the initial breach on Peace Circle, all but
20 Mr. Fischer traveled in a stack formation with their hands
21 on each other's backs as they -- inching their approach onto
22 the Capitol grounds.  Mr. Brett's hand was on Mr. Rajewski's
23 back.  Another member of their marching group, Steven Miles,
24 who is charged in a separate case, had his arm on Rajewski's
25 back.  Johnson's arm was then on Mr. Miles's shoulder.

1   Another member of their marching group, Matthew LeBrun, had
2   his arm on Johnson's shoulder and, then, Boelle's arm was on
3   LeBrun's shoulder as they approached the Capitol.
4           Then, while the men were on the west front of the
5   Capitol again, they were frequently in close proximity to
6   one another before they traveled to the lower west terrace,
7   where the majority of the charges brought in this case
8   relate to.
9           The men then entered the tunnel together.
10  Mr. Fischer is observed on video turning backwards towards
11  the west (indiscernible) after they've entered; they appear
12  to be consulting with one another before they adjust and
13  pull up their masks.
14          The men then are in the tunnel in a coordinated
15  fashion, are pushing against the line of officers trying to
16  protect the Capitol from being breached.  The video shows
17  Mr. Rajewski's hands are on Johnson's back; Mr. Boelle hands
18  on are on Brett's back as they are pushing against the
19  officers.  At one point, Brett turns back and appears to
20  again consult with Mr. Johnson before they continue to push
21  against the line of officers.  Mr. Fischer was also observed
22  pushing on Mr. Johnson and Mr. Rajewski's back, in a
23  coordinated fashion, to try to breach the line of officers
24  that are there.  And then, once the police are able to push
25  the rioters -- including these defendants -- out of that

1    tunnel, they are observed on video celebrating.
2            There is one photograph that depicts Mr. Fischer
3    holding up a Capitol Police riot shield that was taken from
4    the officers during the melee.  Mr. Johnson is holding up a
5    police baton also recovered from a police officer; and
6    Mr. Rajewski and Mr. Boele are also present in that photo.
7    In another video, after they're pushed out of the tunnel,
8    they are seen cheering with the crowd and then
9    congratulating each other, laughing.
10           Mr. Fischer and Mr. Johnson pat Mr. Rajewski on
11   the shoulder.  Mr. Fischer and Mr. Rajewski attempt to
12   apparently fist bump one another in congratulations.  And
13   so -- while they're not charged in a conspiracy, these are
14   defendants who went to the Capitol together, committed
15   crimes together, and then celebrated those crimes together.
16           The crimes that they committed together are
17   charged on an aiding and abetting theory.  So because of
18   that overlay in their conduct they have been charged
19   together.  And we believe that the evidence of the crimes as
20   to all of them is virtually identical, and so we think it
21   makes sense they should be charged together.  Given that
22   overlap, we believe it would be the most efficient use of
23   your judicial resources.  We don't think this trial would
24   take probably more than a week, even for all of the
25   defendants.

1       But given that the government is hoping to extend
2  plea offers in then next -- just over a week -- I think it's
3  also a little -- there is a possibility that some of these
4  cases can be resolved short of trial.  I know Your Honor had
5  raised a concern about trying five defendants at once; it's
6  possible that would be an issue.
7       THE COURT:  It's a serious concern to me.
8       MS. MOORE:  I understand.
9       THE COURT:  But you are right; it's premature to
10 be worried about that problem at this point.  There is still
11 a lot of water to go over the dam.
12      When you say it would take a week, how many
13 witnesses do you have -- in just rough numbers?  I am not
14 holding you to it.  I am not holding you to it.  Give me a
15 ballpark.  6, 10, 12?  What do you have in mind?
16      MR. GORDON:  Your Honor, in similar cases to this
17 one, the government's used somewhere around 10 to 12
18 witnesses in total.
19      THE COURT:  All right.  I assume -- for the sake
20 of discussion anyway at the moment -- that there is no,
21 let's say, evidentiary issues that need to be resolved prior
22 to your getting to the plea negotiation stage.
23      MS. MOORE:  None that I am aware of, and none that
24 defense counsel has raised with us.
25      THE COURT:  Okay.

1           MS. MOORE:  Although, I understand from
2  Mr. Summers that he is investigating a particular issue that
3  may bear on the plea offer that we may enter into with him.
4  I am not sure if he has a better sense on timing on which he
5  may have that additional information that may bear on any
6  plea that we might enter into with his client.
7           THE COURT:  We will give him a chance to address
8  that.
9           Anything else the government wants to raise at
10 this point?
11          MS. MOORE:  I just believe that there was --
12 perhaps pretrial is in a better position to raise this;
13 there was a violation report with regard to Mr. Johnson
14 [sic].  They had asked for, I think, or sought a higher
15 level of supervision as to him.
16          Other than that, nothing else from the government.
17          THE COURT:  All right.  Why don't we do these --
18 go through the defendants in the order we have here on the
19 indictment.
20          Mr. Summers, you would be the first for
21 Mr. Johnson.
22          MR. SUMMERS:  Thank you, Your Honor.
23          Your Honor, Ms. Moore is correct.  We have hired
24 an expert regarding the pepper spray.  I am waiting on a
25 report from the expert essentially on the -- essentially,

1   the dangerousness of pepper spray; that report is not in
2   yet, Your Honor.  Based on that, we were going to seek a
3   60-day continuance so that we can receive the report,
4   provide it to the government and then, obviously, go from
5   there.
6            The other issue, Your Honor, is -- I have drafted
7   a motion for severance; but I think, at this point, I am
8   going to hold on to it until that issue is ripe.  I just
9   feel at this point in time it's just not ripe yet.
10           THE COURT:  It probably is too soon.
11           Any other concerns or issues that you want to
12  address at this point in time, Mr. Summers?
13           MR. SUMMERS:  No, Your Honor.
14           THE COURT:  Very good.
15           Mr. Orenberg, you are next, for Mr. Rajewski.
16           MR. ORENBERG:  Yes, Your Honor.  Good afternoon.
17           We agree with Ms. Moore's suggestion to the Court
18  that we set another status date.  I would suggest 60 days --
19  maybe even longer -- so we do have time to review what we
20  expect to receive, the proposed plea offer, and any
21  additional global evidence.
22           THE COURT:  Okay.  That's fine.
23           Ms. Stewart, you would be next for Mr. Fischer and
24  for Mr. Boele.
25           MS. STEWART:  Thank you, Your Honor.

1               We would be looking for 60 to 90 days.  The
2    prosecution is saying -- if they're saying that they're
3    going to send a plea offer, we certainly don't want to rush;
4    we would want to allow time.  So I think we can toll the 90
5    days still given the amount of video and investigative team
6    research into that.  I would just say here, until we look at
7    the plea offer, we would agree that it's not time for a
8    motion to sever.
9               But I would highlight that the AUSA's narrative is
10   a narrative that we contest.  You can make up a story based
11   on bits and pieces of video, but we object to it on the
12   contrary.  That's our position at this time.  Thank you.
13              THE COURT:  All right.
14              And then I think, Ms. Petras, you're covering for
15   Ms. Mullin for Mr. Brett.
16              MS. PETRAS:  Yes, Your Honor.
17              And Ms. Mullin also asked that we request, on
18   behalf of Mr. Brett, 60 to 90 days to review the discovery
19   and consider any offer.
20              I think the only other outstanding issue is
21   Ms. Mullin filed an unopposed motion for a slight
22   modification to the conditions of release just asking that
23   the Court authorize pretrial services to modify the curfew
24   when they are approving travel.  I believe they currently
25   have the authority to approve travel; but when they do that

1    there is some issue with the curfew, so they have to go to
2    the Court.  Rather than having to go to court every time,
3    Ms. Mullin was asking that the Court authorize pretrial
4    services to make those adjustments stated.
5             THE COURT:  As you know, I deal with adjustments
6    by pleadings.  And it's not enough for the defense counsel
7    to indicate that the government has said that; the
8    government has to file something.
9             MS. PETRAS:  Okay.  I believe her motion has been
10   filed --
11            THE COURT:  Okay.  I will check that.  Assuming
12   everything is there, I can rule on that; that is not going
13   to be a problem.
14            MS. PETRAS:  Thank you, Your Honor.
15            THE COURT:  How about -- any other issues that you
16   might have regarding discovery or anything like that,
17   Ms. Petras, at this point?
18            MS. PETRAS:  Not at this point.  I think
19   Ms. Mullin indicated that she may be filing a severance
20   motion.  I am sure she would agree that it's not ripe yet,
21   but has heard what the Court has to say on that.
22            THE COURT:  Okay.  Well, I am going to take the
23   lead of defense counsel and government counsel and set a
24   status hearing for March 10th, which is about 90 days.
25   We'll make it March 9 -- March 9, that's better -- at four

1  o'clock, for a status hearing.
2              The Court will find in the interest of justice the
3  Speedy Trial Act waived between now and then, assuming
4  that's agreeable with all of the parties.  You can indicate
5  on the record if that's agreeable.  The Court will find in
6  the interest of justice that the Speedy Trial Act will be
7  waived between now and March 9.
8              I will start with the government.
9              Is that agreeable to the government?
10             MR. GORDON:  Yes.
11             MS. MOORE:  Yes.  Thank you, Your Honor.
12             THE COURT:  Mr. Summers.
13             MR. SUMMERS:  Yes, Your Honor.
14             THE COURT:  Mr. Orenberg?
15             MR. ORENBERG:  Your Honor, I may have a scheduling
16  problem.  I am scheduled to begin a two-week trial with
17  Judge Nichols in another January 6 case with five
18  codefendants on March 6; however, I don't want to upset the
19  applecart here.  I am in trial; the case could get resolved,
20  I don't know at this point.  I could ask one of my
21  colleagues to stand in for me for scheduling purposes.
22             THE COURT:  That's fine.  That's fine.
23             Let's see how that goes.
24             How about waiving the Speedy Trial Act between now
25  and --

```
 1              MR. ORENBERG:  Yes.  I was just going to say yes.
 2   Otherwise, we will waive the Speedy Trial Act between today
 3   and March 9, 2023.
 4              THE COURT:  That's good then.
 5              Ms. Stewart, you are next.
 6              MS. STEWART:  Yes, Your Honor.  We agree with
 7   waiving.
 8              THE COURT:  Okay.  That's for both Mr. Fischer and
 9   Mr. Boele, right?
10              MS. STEWART:  Yes, Your Honor.
11              THE COURT:  Okay.  Thank you.
12              Ms. Petras, on behalf of Ms. Mullin, for
13   Mr. Brett?
14              MS. PETRAS:  Yes, Your Honor.
15              THE COURT:  Very good.  All right, Counsel.
16              Ms. Petras, I will take a look at that motion and
17   make sure everything has been filed from the government's
18   point of view.
19              MR. GORDON:  Your Honor, the government hasn't
20   filed a response yet, but I will do so -- if not today,
21   tomorrow.  It's true we don't contest it, but I understand
22   we need to file a record --
23              THE COURT:  It doesn't need to be lengthy.
24              MR. GORDON:  Yes, Your Honor.
25              THE COURT:  It'll be fine.
```

1           Any other issue that anyone wants to raise at this
2    point as it relates to anything related to the case?
3           (No audible response.)
4           THE COURT:  Hearing no one, I think we have
5    covered what we need to cover today.
6           I wish everybody a happy holiday, and we will see
7    you in 2023.
8           MS. MOORE:  Thank you, Your Honor.
9           MS. PETRAS:  Thank you, Your Honor.
10          MR. SUMMERS:  Thank you, Your Honor.
11          MR. ORENBERG:  Thank you, Your Honor.
12          MS. STEWART:  Thank you, Your Honor.
13          THE COURT:  We're adjourned.
14          (Whereupon, the proceeding concludes, 4:33 p.m.)

**CERTIFICATE**

16          I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
    certify that the foregoing constitutes a true and accurate
17   transcript of my stenographic notes, and is a full, true,
    and complete transcript of the proceedings to the best of my
18   ability.
19          This certificate shall be considered null and void
    if the transcript is disassembled and/or photocopied in any
20   manner by any party without authorization of the signatory
    below.
21
        Dated this 20th day of January, 2023.
22
        /s/ Elizabeth Saint-Loth, RPR, FCRR
23      Official Court Reporter