**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 22-CR-11 (RJL)** |
| | : | |
| **DION RAJEWSKI,** | : | |
| **BRIAN BOELE,** | : | |
| **ALAN FISCHER, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

---

**GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION TO SEVER**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its omnibus Response in Opposition to Defendants' Motions to Sever (ECF No. 125 and 134). Defendant Johnson is scheduled to plead guilty, and the government anticipates a resolution with defendant Brett, leaving a three-defendant trial (and the remaining three defendants' motions to sever).

Defendants Rajewski, Fischer, and Boele all contend that the charges against them were improperly joined under Rule 8 and ask the Court to sever the cases for trial under Rule 14. However, as described in greater detail below, the defendants were properly joined in this case and a Rule 14 severance is inappropriate because defendants have failed to show a serious risk that a joint trial would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence. The defendants were properly joined chiefly because they traveled to the Capitol, attacked officers together there on January 6, and are charged with many of the same offenses and the evidence against all three will be very similar. Defendants identify no substantial disparity in evidence, charges, or culpability, no specific antagonistic defenses, and no other persuasive reasons to sever Fischer and Boele from Rajewski. Therefore, the Court should

deny the defendants' motions.

**FACTUAL BACKGROUND**

Defendants Dion Rajewski (blue circle in the images below), Brian Boele (red circle), Alan Fischer (green circle), James Brett (yellow circle), and Zachary Johnson (purple circle) are five of the individuals who unlawfully entered the grounds of the U.S. Capitol and who have been charged with various crimes relating to the attack on the Capitol on January 6. *See* Second Superseding Indictment, ECF 54.  However, these defendants are not just any five random individuals.  Nor are they five individuals who happened to find themselves standing together in a crowd. The defendants all knew each other (Boele and Fisher are related) and on January 6, 2021, they walked together to the Capitol, where they acted with one common goal, acted in concert against police, and celebrated their actions together.

All five defendants are from the Tampa Bay area where Fischer, Rajewski, Brett, and Johnson had joined the local Proud Boy chapter.  Phone records revealed that leading up to, and on January 6, 2021, Boele communicated with both Rajewski and Fischer. On January 6, the five men joined the congregation of Proud Boys from all over the country in Washington. The five men spent much of the day together, moving and acting in concert and with the same purpose.

Over the course of the day, video and photographs capture the five men's movements together from the area near the Ellipse to the Capitol grounds. Below is a picture of Rajewski (blue arrow), Boele (red circle), Brett (yellow circle), and Johnson (purple circle).



In the below pictures Fischer is circled in green, Boele in red, Rajewski in blue, Brett in yellow, and Johnson in purple.





As the defendants reached the Peace Circle, they traveled in a stack formation, with their hands on each other's shoulders, off the sidewalk and on to the grass, to continue their approach onto restricted Capitol grounds.  A stack formation is this is a military-type maneuver that is meant to keep the group together and requires coordination and know-how. As they maneuvered, Brett had his hand on Defendant Rajewski's shoulder.  Johnson was one person behind Rajewski and Boele was stacked one person behind Jonson.

The all five defendants regrouped on the west plaza of the Capitol where they remained close together and stoked the flames of the riot.  The five are frequently captured near one another by open-source and CCTV, as seen in the image below, which shows Fischer (green), Boele (red), Rajewski (blue), and Brett (yellow) in the west plaza.



The defendants then traveled to the Lower West Terrace where all five defendants entered the "Tunnel" together at approximately 3:15 p.m.[1]  In the Tunnel, the defendants began to push in a coordinated fashion against the line of police offcers protecting the interior of the Capitol building from being breached by rioters.  Immediately after entering the Tunnel, Defendant Fischer (green) is captured turning around and appears to consult with Rajewski (blue), Boele (red), and Johnson (purple) who positioned their masks over their faces.



---

[1] The entrance and passageway connecting the Lower West Terrace and the interior of the U.S. Capitol usually consist of a flight of stairs leading to a doorway.  On January 6, 2021, however, the construction of the inaugural stage converted the stairway into a 10-foot-wide, slightly sloped, short tunnel that was approximately 15 feet long.  The Tunnel led to two sets of metal swinging doors inset with glass.  It was the scene of some of the worst violence on January 6.

While inside the tunnel, the defendants' hands were on each other's backs as they pushed in a coordinated fashion.  Brett and Johnson appear to speak during this time.  Fischer can be seen pushing up against Rajewski and Johnson as Fischer is captured yelling "PUSH!" Below is a picture of all five stacked up on each other with Boele's hand on Rajewski's back.



After the five defendants are pushed out of the Tunnel, they are captured congratulating each other and chanting "USA!"  Below two photos are still shots from video in which Johnson (purple)and Fischer (green) are captured flashing a Proud Boys hand sign as they stand next to each other.  Defendants Rajewski (blue) and Boele (red) pose for a photograph.  Defendants Rajewski and Fischer attempted a fist bump then; Fischer clapped Rajewski on his shoulder; Boele is next to them.





Defendants Rajewski and Fischer remain outside the tunnel with Johnson where they rekindled their coordinated attempts to push against officers.  Fischer used the USCP shield to aid in his efforts to push against officers. Rajewski and Johnson pushed in close to each other and Fischer.  At one point Johnson passes a can of OC spray to Rajewski, who then passes it up to another rioter closer to the officers.  Johnson also passed up a sledgehammer to those closer to the police line.  The three men (Johnson, Fischer, and Rajewski) then engaged in more coordinating pushing while near each other.  Later, Fischer is captured assaulting officers with a chair, pipe, and cone (the basis of Counts 15 and 16).

As a result of their actions on January 6, 2021, the Indictment charges the defendants with the following:

| Count | Charge | Defendant(s) |
|-------|--------|--------------|
| 1 | Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) | All |
| 2-3 | Assaulting, Resisting, or Impeding Certain | Johnson and Fischer |

| | | |
|---|---|---|
| | Officers Using a Dangerous Weapon, in violation of 18 U.S.C. § 111(a)(1) and (b) and 2 | |
| 4-5 | Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A) and 2 | Johnson and Rajewski |
| 6 | Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A) | Fischer |
| 7 | Entering and Remaining in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(1) and 2 | Boele and Brett |
| 8&10 | Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A) and 2 | Johnson and Rajewski |
| 9 | Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A) | Fischer |
| 11 | Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2) and 2 | Boele and Brett |
| 12 | Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A) and 2 | Johnson and Rajewski |
| 13 | Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A) | Fischer |
| 14 | Disorderly and Disruptive Conduct in the Capitol Building or Grounds in violation 40 U.S.C. § 5104(e)(2)(D) | All |
| 15 | Act of Physical Violence in the Capitol Grounds or Buildings in violation 40 U.S.C. § 5104(e)(2)(F) and 2 | Fischer |
| 16 | Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) | Fischer |

## ARGUMENT

The "weight of authority in this circuit and elsewhere regards Rule 8(b) as providing the sole standard for determining the permissibility of joinder of offenses" in cases with multiple defendants. *United States v. Wilson*, 26 F.3d 142, 153 n.4 (D.C. Cir. 1994) (citations omitted); *see also United States v. Perry*, 731 F.2d 985, 989 (D.C. Cir. 1984); *United States v. Jackson*, 562 F.2d 789, 793-94 (D.C. Cir. 1977).  Rule 8(b) permits joinder of defendants "alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  Fed. R. Crim. P. 8(b).  This circuit construes Rule 8(b) broadly in favor of joinder.  *See United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991) ("[T]his circuit's law makes it difficult to prevail on a claim that there has been a misjoinder under Rule 8(b).").  The defendants' objections to joinder are that the cases are misjoined and therefore risk irreparable prejudice. Neither objection is accurate, and neither forms a valid basis for severance.

The cases against the defendants are properly joined. In cases with multiple defendants and multiple offenses, the "weight of authority in this circuit and elsewhere regards Rule 8(b) as providing the sole standard for determining the permissibility of joinder of offenses."  *Wilson*, 26 F.3d at 153 (citations omitted); *see also United States v. Brown*, 16 F.3d 423, 427 (D.C. Cir. 1994); *United States v. Perry*, 731 F.2d 985 at 989; *United States v.  Jackson*, 562 F.2d at 793-94. Rule 8(b) provides:

> JOINDER OF DEFENDANTS. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or *in the same series of acts* or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. Crim. P. 8(b) (emphasis added). "Rule 8 not only may shield a party from prejudicial joinder but also serves to protect a variety of other interests served by joint trials including the interests in 'conserv[ing] state funds, diminish[ing] inconvenience to witnesses and public authorities, and

11

avoid[ing] delays in bringing those accused of crime to trial.'" *Brown*, 16 F.3d at 428 (internal citations and quotations omitted). "There is a preference in the federal system for joint trials." *United States v. Bikundi*, 926 F.3d 761, 780 (D.C. Cir. 2019). This Circuit construes Rule 8(b) broadly in favor of joinder. *See United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991). *United States v. Jackson*, 562 F.2d 789, 796-97 (D.C. Cir. 1977) (Rule 8 is "interpreted broadly in favor of initial joinder"). Thus, it is "difficult to prevail on a claim that there has been a misjoinder under Rule 8(b)." *Nicely*, 922 F.2d at 853.

The propriety of joinder "is determined as a legal matter by evaluating only the 'indictment [and] any *other pretrial evidence offered by the Government*.'" *United States v. Carson*, 455 F.3d 336, 372 (D.C. Cir. 2006) (emphasis added; internal citations omitted). Joinder under Rule 8(b) "is appropriate if there is a 'logical relationship between the acts or transactions' so that a joint trial produces a 'benefit to the courts.'" *United States v. Spriggs*, 102 F.3d 1245, 1255 (D.C. Cir. 1996) (quoting *United States v. Perry*, 731 F.2d at 990.

Defendants who are properly joined under Rule 8 "may seek severance under Rule 14, which provides that '[i]f the joinder of offenses or defendants . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.'" *United States v. Wilson*, 605 F.3d 985, 1015 (D.C. Cir. 2010) (quoting Fed. R. Crim. P. 14(a)).   Once multiple defendants are properly joined in the same indictment under Rule 8(b), "[d]istrict courts should grant severance" under Rule 14 "sparingly because of the 'strong interests favoring joint trials, particularly the desire to conserve the time of courts, prosecutors, witnesses, and jurors.'" *United States v. Celis*, 608 F.3d 818, 844 (D.C. Cir. 2010) (quoting *United States v. Mardian*, 546 F.2d 973, 979 (D.C. Cir. 1976) (*en banc*)).

Motions for severance of properly joined defendants should be granted only where the

dominant public interest in joint trials is outweighed by substantial prejudice arising from case-specific problems.  *See United States v. Tucker*, 12 F.4th 804, 824 (D.C. 2021) (per curiam) ("Joint trials are preferred in federal criminal cases because they 'promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993)).  "The preference for joint trials is especially strong when the respective charges require presentation of much the same evidence, testimony of the same witnesses, and involve . . . defendants who are charged, inter alia, with participating in the same illegal acts." *Id*. at *12 (internal quotation marks and citation omitted).  Rule 14 "does not require severance even if prejudice is shown," and district courts "should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 538-39. Indeed, district courts retain "significant flexibility to determine how to remedy a potential risk of prejudice, including ordering lesser forms of relief such as limiting jury instructions." *Bikundi*, 926 F.3d at 780 (citing *United States v. Moore*, 651 F.3d 30, 95 (D.C. Cir. 2011)); *see United States v. Butler*, 822 F.2d 1191, 1194 (D.C. Cir. 1987) (acknowledging trial judges are given great latitude to balance interests, including to preserve judicial and prosecutorial resources, and denying defendant's motion to sever).  "[T]he discretion afforded to district courts must be exercised with appreciation of the policy reasons favoring joinder." *United States v. Bikundi*, 14-cr-30 (BAH), 2016 WL 912169, at *42 (D.D.C. Mar. 7, 2016).  "[S]everance is the exception rather than the rule," and "motions to sever should be granted 'sparingly.'" *Tucker*, 2021 WL 3950864, at *12 (quoting *United States v. Celis*, 608 F.3d at 844 (per curiam).

In fact, the D.C. Circuit has instructed that for severance to be proper "[t]here must be a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Bostick*, 791 F.3d 127, 152-53 (D.C. Cir. 2015) (citation and punctuation omitted); *see also United States v. Glover*, 681 F.3d 411, 417 (D.C. Cir. 2012) (affirming district court's denial of defense motion to sever trial citing same standard). Accordingly, severance is not required simply because a defendant might have a better chance of acquittal if tried separately. *See United States v. Halliman*, 923 F.2d 873, 884 (D.C. Cir. 1991). Salient factors the Court should consider, and which militate against severance, include whether separate trials would involve (1) the presentation of the same evidence; (2) testimony from the same witnesses; and (3) the same illegal conduct. *See United States v. Manner*, 887 F.2d 317 (D.C. Cir. 1989).

I.  **Joinder is appropriate and severance is unnecessary because the defendants participated in the same "series of acts" and the evidence against them is largely the same.**

The defendants were properly joined under Rule 8 and satisfies the *Manner* factors because the defendants not only all participated in the attack on the U.S. Capitol, but they also participated in the same "series of acts" when they breached the grounds and worked together to push against officers in an effort to breach the police line, both on the West Plaza and at the Tunnel, and gain entry into the U.S. Capitol building. Contrary to the defendants' claims, the evidence shows that the defendants acted in coordination or in a concerted fashion during multiple group push efforts in the tunnel. As outlined above, the video evidence at trial – including CCTV footage and open-source media – depict all five defendants walking to the Capitol together, communicating with one another, approaching the Tunnel together, and pushing in the tunnel together, and celebrating together.

The case at bar satisfies the three prongs of *Manner*. Much of the evidence, and the key

evidence, the government will present to prove the similar charges includes overlapping communications, video, photographs, and investigations that applies to all defendants, so no great disparity of evidence exists in this case to warrant severance. Indeed, some of this evidence will include communications between Boele, Fischer and Rajewski.  The preference for joint trials of co-conspirators is "especially strong when the respective charges require presentation of much of the same evidence, testimony of the same witnesses, and involve two [or more] defendants who are charged, *inter alia*, with participating in the same illegal acts."  *United States v. Wilson*, 605 F.3d 985, 1016 (D.C. Cir. 2010) (internal quotation marks omitted).

Fischer and Boele wrongly deny that there can be common evidence in a charge where the government must prove a defendant's intent or knowledge (ECF No. 134 at 10).  Setting aside the fact that this argument ignores that there may be common evidence that goes to other elements of the crimes (such as the existence of a civil disorder, or the defendants' presence in a restricted area), there also will be common intent and knowledge evidence here, such as evidence of what all defendants saw as they entered the restricted area and made their way to the Tunnel together – numerous red flags that gave them knowledge that they lacked permission to be where they were.

The defendants' actions during their attack on officers within a narrow, enclosed area and during a circumscribed time period, not to mention their entry onto Capitol Grounds and approach to the Tunnel together, amounted to their "participat[ion] in the … same series of actions …, constituting an offense or offenses." Rule 8(b). The overlap in the charged conduct triggers "the presumption and common practice [that] favor trying together defendants who are charged with crimes arising out of a common core of facts." *United States v. De La Paz-Rentas*, 613 F.3d 18, 23 ($1^{s}$t Cir. 2010).

The entire premise of defendants Fischer and Boele's motion – that "there were no joint

actions or joint goals among the Co-Defendants" (ECF No. 134, at 11) is thus entirely wrong.  So is their claim that their cases were only joined because of their Proud Boys' association (ECF No. 134 at 2 and ECF No. 125 at 4), and not because of a common scheme or act. The government anticipates that most witnesses and evidence that it will present will be largely the same for all defendants, and most of the charges are the same.  As Judge McFadden has noted is an "activity, like conspiracy, [which] requires multiple people." *United States v. McCaughey, et. al.*, 21 CR 40 (TNM), Dkt. Entry 290 at 4 (denying motions to sever in a case charging nine defendants with crimes committed in the Tunnel). Thus, the "'strong interests favoring joint trials, particularly the desire to conserve the time of courts, prosecutors, witnesses, and jurors,'" *Celis*, 608 F.3d at 844, applies to this case.

This case was not charged by picking "names out of a hat," as Fischer complains. See ECF No. 134 at 7.  These five defendants breached the grounds together and worked together, not just at the same place, but at the same time, in a concerted effort to create a civil disorder, assault or interfere with law enforcement with the common goal of breaching the police line during a brutal battle over one entrance to the Capitol Building. Severance here would be highly inefficient, requiring the Court to hear essentially the same trial twice, increasing the burden for witnesses (including officers who were victims of the brutal violence in the Tunnel), the D.C. jury pool (citizens would have to fill two venires, and two separate juries would need to be empaneled), in addition to government attorneys.[2]  "Defendants worked together.  They should be tried together." *United States v. McCaughey, et. al.*, 21 CR 40 (TNM), Dkt. Entry 290 at 4 (denying motions to sever in a case charging nine defendants with crimes committed in the

---

[2] Moreover, two trials would even create some additional costs for the defense attorneys; given the substantial overlap in evidence, one would expect that Rajewski's counsel would need to follow Fischer/Boele trial, and vice versa.

Tunnel).

## II. Defendants Cannot Meet Their Burden Under Rule 14 To Demonstrate Prejudice Sufficient to Overcome the Preference for Joinder

None of the three defendants carry their burden to demonstrate that a joint trial creates a serious, insurmountable risk to their specific trial rights or to the jury's ability to make a fair decision.

### a. None of the Defendants have shown he and his codefendants have markedly different degrees of culpability, and there is minimal danger of spillover prejudice.

Rajewski and Fischer/Boele each argue that he/they will suffer prejudice because the charges against his codefendants are either different or more serious.[3]  ECF No. 125 at 7-10 and ECF No. 134 at 10-11.[4]  However, a risk of prejudice under these circumstances substantiates a severance only "[w]hen the evidence against one or more defendants is far more damaging than the evidence against another defendant." *United States v. Wilson*, 605 F.3d at 1018. "Absent a dramatic disparity" of that evidence, the risk of prejudice can be mitigated through "instructions to the jury to give individual consideration to each defendant." *Moore*, 651 F.3d at 95. The

---

[3] Rajewski incorrectly asserts that he is only charged with misdemeanors while his codefendants are charged with felonies.  ECF No. 125 at 8.  This is not so.

[4] Defendants Boele and Fischer spend more time discussing that Proud Boys are generally misunderstood and mislabeled than discussing how their fellow co-defendants' criminal conduct is prejudicial to them at a joint trial. ECF No. 134 at 1-4.  It is also simply untrue that this is "the tools trial."  Numerous defendants affiliated with the Proud Boys are charged in separate cases. *See, e.g., United States v. Kuehne,* 21-cr-160 (TJK) (six defendants); *United States v. Jackman,* 21-cr-378 (TJK) (five defendants); *United States v. Worrell,* 21-cr-292 (RCL) (two defendants); *United States v. Ochs,* 21-cr-23 (BAH) (two defendants).  The government has not lumped all of the "tools" together in this case. It has grouped defendants together where, as here, they participated in the breach of the Capitol together.  In some cases, where there is not the overlapping evidence and conduct present here, the government has charged defendants affiliated with the Proud Boys who committed illegal acts on their own.  *See, e.g., United States v. Pruitt,* 21-cr-23 (TJK); *United States v. Elliott,* 21-cr-735 (RCL).  Furthermore, if Fischer and Boele are concerned about unfair prejudice from their Proud Boys affiliation, the proper remedy for that is a motion in limine to limit the use of such evidence at trial, not severance from another defendant.

defendants cannot make such a showing here.

While the defendants may each face slightly different charges, each co-defendant's conduct is not markedly different (much less "far more damaging") from one another, and the defendants fail to carry the "heavy burden of making a strong showing of factually specific and compelling prejudice resulting from a joint trial." *United States v. Benton*, 852 F.2d 1456, 1469 (6th Cir. 1988). There is a great deal of overlap in conduct and evidence in this case. Fischer, Rajewski, and Boele all entered the restricted grounds and entered the Tunnel together where they joined forces by congregating near each other and rocking back and forth, using each other's bodies and force to push against the line of officers guarding the Tunnel doors. These united actions are the basis of the charges relating to trespass and civil disorder of which all defendants are charged. Rajewski, Fischer, and Johnson then entered the Tunnel again where Rajewski and Johnson took action that is the basis of the deadly weapon enhancement.  The act of passing up a sledgehammer and OC spray is easily. After the tunnel, Fischer threw a chair, cone, and pipe at officers on the Lower West Terrace/west plaza area.  Again, conduct that is easily distinguishable from the other defendant's and not easily transferable on the others.

This is not a case where the government's evidence against Fischer/Boele is "far more damaging" than the evidence against Rajewski, or vice versa.  *United States v. Bruner*, 657 F.2d 1278, 1290 (D.C. Cir. 1981) (internal quotation marks and citation omitted).  *See also United States v. Eiland*, 406 F. Supp. 2d 46, 53 (D.D.C. 2005) (denying severance; "Disparity as to the violence alleged is generally only dispositive when it is combined with another factor, such as drastic differences in those charges.")  Differences at the margins do not create prejudice against either group of defendants, and do not override the overwhelming commonality the defendants share from breaching the Capitol together, participating in the group effort to breach the police

line at the tunnel by, among other things, pushing against police in a coordinated effort, aiding

other rioters, and congratulating each other on their efforts. *See Straker*, 800 F.3d at 626 (affirming

denial of severance even though defendant participated in a kidnapping but was not involved in

the victim's death); *Celis*, 608 F.3d at 844-45 (affirming denial of Giraldo's severance motion in

prosecution for drug-trafficking, even though he, unlike co-defendant Valderama, was not a

member of FARC, a violent revolutionary group that committed atrocities; even if FARC evidence

would have been excluded from a trial against Giraldo alone, "it does not follow that the jury was

incapable of fairly assessing Giraldo's guilt"); *United States v. Mejia*, 448 F.3d 436, 446 (D.C.

Cir. 2006) (affirming denial of Rios' severance motion, even though "the bulk of the trial evidence

concerned Mejia rather than" Rios, where the government "introduced 'independent and

substantial evidence' against Rios").

Furthermore, it is worth noting the current posture of the case. This is likely to be a three-

defendant trial. With this relatively small group, juror confusion is unlikely. *United States v.

Gaviria*, 116 F.3d 1498, 1533 (D.C. Cir. 1997) (no risk of prejudice with four charged defendants);

*United States v. Anderson*, 39 F.3d 331, 348 (D.C. Cir. 1994) (no risk of prejudice with ten charged

defendants). The addition of one defendant to the prosecution of Fischer and Boele (who do not

seek severance from each other) does not tip this case into the realm of incurable prejudice, nor

does Rajewski's joinder with the combination of Fischer and Boele – particularly given how

neither Fischer/Boele nor Rajewski show that the evidence against one of them is so much more

damning and entirely different than the evidence against the others.[5]

---

[5] While noting that, "the Court does not have to consider this" (ECF No. 134 at 11), Fischer and
Boele express concern about the costs of trial to their out-of-town retained counsel. They also
note that, because they have been allowed to remain on pretrial release, they will have to pay to
travel to D.C. for their trial. Such costs are easily outweighed here by the costs to the Court, to
witnesses (including any common defense witnesses these defendants may wish to call), to the

Nor is this a case where the jury will be unable to compartmentalize the evidence against each codefendant. Each of the co-defendant's criminal acts are easily distinguishable from the rest as they were all caught on video, and none of the codefendants were dressed substantially alike on January 6, 2021, so there is little chance the jury will be confused about which defendant engaged in which conduct. *See Straker*, 800 F.3d at 626 ("substantial and independent evidence against Sealey and Straker enabled the jury to reasonably compartmentalize the evidence of guilt against each of them from the rest of the evidence at trial"). Because defendants' words and actions are recorded on video, the jury has "'no need to look beyond each defendant's own words [and conduct] in order to convict.'" *Gaviria*, 116 F.3d at 1533 (per curiam) (quoting *United States v. Anderson*, 39 F.3d at 348). These videos thereby minimize the risk that the jury will not be able to compartmentalize the evidence against each defendant in this case. *See Celis*, 608 F.3d at 846 ("'[T]he danger of spillover prejudice is minimal when the Government presents tape recordings of individual defendants.'") (quoting *Gaviria*, 116 F.3d at 1533). It is important to note that Boele and Fischer do not seek severance from each other, despite Fischer's additional charged conduct, an implicit admission that they themselves do not believe there is a risk that more severe conduct will irreparably prejudice another and recognize the efficiencies gained in *their own* counsel only having to try the case once, undercutting their argument for severance from Rajewski.

### b. Each Defendant has not shown that his defense is mutually antagonistic or irreconcilable with his codefendants.

Defendant Rajewski raises concern about a "high likelihood of antagonistic defenses," while defendant Fischer warns that he "is not going to abbreviate his case for the convenience of co-defendants." ECF No. 134 at 11. These concerns are unspecific, unsubstantiated, and do not

---

government, and to the entirely separate venire of citizens that must be called and jury panel that must sit. Nor do Fischer and Boele explain how including defendant Rajewski in the trial will significantly prolong it and substantially increase their costs.

warrant severance.  Defendant Rajewski does not provide any facts suggesting that his defense is going to be antagonistic to either Fischer or Boele's, and when much of the government's evidence concerns his own acts, caught on video, it is difficult to envision how he could blame Fischer or Boele for, say, his own pushing against the police...  For his part, Fischer's argument does not so much as suggest that his defense will be antagonistic to Rajewski's, only that it may take longer to present.

These generalized claims are an insufficient basis for Rule 14 severance.  See e.g., *United States v. Smith*, 788 F.2d 663, 668 (10th Cir. 1986)("a defendant must make a factual demonstration, not an abstract allegation, that "the acceptance of one party's defense would tend to preclude the acquittal of other," or that "(c)onversely, such a showing would seemingly require that the guilt of one defendant tends to establish the innocence of the other."); *United States v. Keck*, 773 F.2d 759, 765 (7th Cir. 1985)("Defenses are mutually antagonistic, however, only where the acceptance of one party's defense precludes the acquittal of the other defendant."); *United States v. Magdaniel-Mora*, 746 F.2d 715, 719 (11th Cir. 1984)(defendant must satisfy the court that "the essence of [their] defense is contradicted by a co-defendant's defense.").No defendant has made a factually specific showing here that his defense is irreconcilable with any other co-defendant or, like in *Tootick*, the defense turns on defendants testifying against each other to shift blame.  Even if they were to do so, the Supreme Court (in *Zafiro,* 506 U.S. at 538) has held that mutually antagonistic defenses are not prejudicial *per se*, and a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such is not the case here.

Additionally, Defendant Rajewski, citing *Bruton v. United States*, 391 U.S. 123, 131 n. 6

(1968), argues a joint trial will violate his Sixth Amendment right to confrontation if another co-defendant's statement is admitted.  ECF No. 125 at 11.  Rajewski claims that he would then be compelled to testify to "explain away the incriminating statement(s) of his co-defendant(s)." *Id*. at 12.  The government does not believe *Bruton* will be an issue but will still address the agreement.  First, *Bruton* did not shy away from joinder, it simply laid ground rules holding, "Rules 8(b) and 14 are designed 'to promote economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial.'" *Bruton*, 391 U.S. 123, 131 n. 6 (1968) (internal quotation marks omitted)).  Second, in laying those ground rules, *Bruton* requires that the government, when admitting one co-defendant's statement, sanitize the statement so that any other co-defendant's name and therefore protects the other co-defendant under both the Fifth and Sixth Amendments.  If any other defendant's sanitized statement is introduced, Defendant Rajewski will not be precluded from cross-examining the introducing witness, he will just have to be more skilled.

### III.    A Limiting Instruction Will Cure Any Concerns.

Finally, even assuming, *arguendo*, that there are some disparities in evidence between Rajewski and Fischer/Boele, "any prejudice caused by joinder is best dealt with by instructions to the jury to give individual consideration to each defendant."  *Moore*, 651 F.3d at 95 (D.C. Cir. 2011) (per curiam) (citation omitted).  "*[S]ome* disparity in evidence does not compel severance," especially where the government presents "substantial and independent evidence of each defendant's significant involvement" in the charged conduct.  *Id.* at 95-96 (emphasis added) (quoting *United States v. Tarantino*, 846 F.2d 1384, 1399 (D.C. Cir. 1988)).  Given the evidence of guilt against each defendant, a jury instruction which explains that each defendant's guilt must be considered individually based upon the evidence that pertained to him will cure any potential

spillover prejudice. *United States v. Ford*, 155 F. Supp. 3d 60, 70 (D.C. Cir. 2016.); See *Zafiro*, 506 U.S. at 539 ("less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice"); *Tucker* at 825.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that defendant Joseph's motion to sever be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Michael M. Gordon*_____
        MICHAEL M. GORDON
        Assistant United States Attorney,
        Detailee
        Florida Bar No. 1026025
        400 N. Tampa St., Suite 3200
        Tampa, Florida 33602
        (813) 274-6370
        michael.gordon3@usdoj.gov

        */s/ Rebekah E. Lederer*_____
        REBEKAH E. LEDERER
        Assistant United States Attorney
        Pennsylvania State Bar No. 320922
        601 D St., NW
        Washington, D.C. 20530
        (202) 252-7012
        rebekah.lederer@usdoj.gov